No. 71–1263.  KAHN ET UX. v. ARIZONA STATE TAX COMMISSION.  Appeal from Ct. App. Ariz.  Motion to dispense with printing jurisdictional statement granted. Appeal dismissed for want of substantial federal question.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BRENNAN concurs, dissenting.

Appellants, after exhausting administrative remedies, brought suit in the Superior Court of the State of Arizona to recover personal income tax assessments paid under protest for the years 1967–1969.  The assessments in question were imposed on the income of the appellant

husband (hereafter appellant) which he earned while being employed, first as a law clerk and then later as an attorney for the Navajo Tribe. Appellant's salary was paid out of Indian tribal funds. Appellant and his wife, who are not Indians, resided within the reservation. The Superior Court dismissed the suit for failure to state a claim upon which relief could be granted. The Arizona Supreme Court affirmed the dismissal.

Appellant's employment was controlled by 25 U. S. C. § 81, which governs the conditions under which contracts can be made with Indian tribes or Indians. Even more specifically, appellant's employment was subject to the regulations promulgated by the Secretary of the Interior in 25 CFR §§ 72.1–72.25. Under these regulations, any attorney performing legal services for the Indian tribe must have his employment contract, which includes fees and expenses, approved by the Secretary of the Interior. (25 CFR § 72.1.) In addition, in determining the appropriateness of the fees, the amount of tribal funds held in the tribal treasury, not otherwise appropriated and available for payment, must be considered. (25 CFR § 72.5.) Tribal funds may not be used for payment of attorney fees and expenses in the absence of express authorization by Congress. (25 CFR § 72.6.) In order to be eligible to act as an attorney for an Indian tribe, the area director must review the applying attorney's references and qualifications (25 CFR § 72.4) and transmit a recommendation to the Secretary of the Interior. In order to be qualified to provide such representation, the attorney must be admitted to practice before the Department of the Interior and the bureaus thereof. (25 CFR § 72.2.) An attorney performing legal services for an Indian tribe is subject to criminal penalties for the violation of the statutes governing attorney contracts with Indian tribes (18 U. S. C. § 438), and can be fired by the Secretary of the Interior (*Udall* v.

*Littell,* 125 U. S. App. D. C. 89, 366 F. 2d 668, cert. denied, 385 U. S. 1007).

As this Court recently stated in *McClanahan* v. *Arizona State Tax Comm'n, ante,* p. 164, at 168, " '[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history.' *Rice* v. *Olson,* 324 U. S. 786, 789 (1945)." In *McClanahan* the Court rejected the theory that nothing remains of the notion that reservation Indians are a separate people to whom state jurisdiction, and therefore state tax legislation, may not extend.

In *Warren Trading Post Co.* v. *Arizona Tax Comm'n,* 380 U. S. 685, this Court struck down a state attempt to assess a 2% tax on the "gross proceeds of sales, or gross income" of the Warren Trading Post Co., which did retail trading with Indians on the reservation under a license granted by the Commissioner of Indian Affairs. The Court emphasized the comprehensive federal regulatory scheme applicable to persons doing business as Indian traders, which granted the Commissioner of Indian Affairs the authority to appoint the traders, specify the types of goods sold, and regulate the actual running of the business. The Court concluded that these apparently all-inclusive regulations and statutes would be sufficient to show that Congress had taken the business of Indian trading on reservations so fully in hand that no room remained for state laws imposing additional burdens.

Part of the Court's reasoning in *Warren Trading Post, supra,* was that "Congress has, since the creation of the Navajo Reservation nearly a century ago, left the Indians on it largely free to run the reservation and its affairs without state control, a policy which has automatically relieved Arizona of all burdens for carrying on those same responsibilities." Therefore, the Court concluded that "[t]his state tax on gross income would put financial bur-

dens on appellant or the Indians with whom it deals in addition to those Congress or the tribes have prescribed, and could thereby disturb and disarrange the statutory plan Congress set up in order to protect Indians against prices deemed unfair or unreasonable." *Id.*, at 690, 691.

These policy considerations should also be controlling here. Attorneys providing legal services for Indian tribes are subject to strict Federal Government regulation and control, from the very selection of counsel through negotiations of the employment contract to approval of the form and content of such contract, including fees, and criminal sanctions for the breach of these regulations.

Legal representation has become an important avenue by which the Indian tribes can attempt to salvage a decent lifestyle. Very simply, a skilled professional can afford to take a lower salary if he does not have to pay income taxes to the State. As in the situation of a tax on the income of a trading post, an additional tax on these essential services could indeed "disturb and disarrange the statutory plan Congress set up in order to protect Indians against prices deemed unfair or unreasonable."

I would note probable jurisdiction and not dispose of the case without full argument and briefing.